May it please the court, I'm Fred Wright, representing the appellant Sterling Winchester and Long. And this case involves an appeal from a grant of summary judgment by the Court of Federal Claims on a breach of contract case. The contract involves the production of calendars, thematic calendars that would feature stamped designs and be distributed in certain channels of distribution that are outlined in the contract. The contract gives Sterling the right to manufacture, distribute and sell up to five series of these calendars per year for an initial term of three years. The contract also requires Sterling Winchester to make its best efforts to distribute, to manufacture and sell these calendars and to distribute them. And Sterling is required under the contract to make and maintain adequate and reasonable arrangements for the distribution of the calendars through the channels of distribution that are specified in the agreement. Now paragraph five of the agreement spells out what the distribution channels are and among other things the distribution channels are philatelic centers and philatelic catalogs. Now Sterling Winchester's position in this case has been that those terms either refer to philatelic centers and philatelic catalogs that are owned and or published by the Postal Service or that the terms certainly include those facilities if they don't refer exclusively to them. Those terms aren't defined in the contract, are they? They are not, Your Honor. And are there non-United States Postal Service philatelic centers? We don't know that from the record in this case and I'm glad you made that point because I was going to make that myself. The record in this case is completely silent as to whether there exist philatelic centers denominated as such anywhere within the licensed territory, which would essentially be the United States and certain foreign territories, other than the philatelic centers that are owned and operated by the Postal Service. But are you required to distribute only through those channels? Is that in the agreement? Can you distribute outside of those channels? No, Your Honor. Our position would be that the agreement limits Sterling. When does it say that? Well, I don't know that it has language in it that specifically says that, per se. But what it would say is that the—I'm looking now at the agreement, which starts at Appendix 35, and it says that the—just bear with me one second. It says that the grant of the license to use the intellectual property of the Postal Service in producing these calendars is limited to the terms of the agreement. And it says that the distribution channels, the channels of distribution for the agreement, are set forth as being wholesale to bookstores, specialty stores, philatelic catalogs, philatelic centers, and merchandise stores. And then, as I said, the— On page 35, that's your license agreement. That's the first page, yes, Your Honor. And it speaks to the definition of the various terms used below as listed in Exhibit B. Right. And it lists channels of distribution. And when you turn to Exhibit B, which is the addition to the agreement, it becomes specific, but only uses those particular aspects of the definition. It doesn't mandate that you have to distribute the product only through those channels of distribution, does it? I couldn't find any language in the agreements, both Part A and Part B or other parts of the license, saying that's the only channel of distribution that you have. Quite honestly, Your Honor, I'm not aware of any language in the agreement that spells it out that clearly. The parties, I think, always have understood. I believe the Postal Service would agree with Sterling's position that the license, the grant of the license in this case, was limited only to distribution through the channels in this agreement. I believe that's the way that Sterling understood it at the time. If that's the correct reading, that would seem to me to be unhelpful to your position inasmuch as it would suggest that that clause was not intended to be a grant of right to Sterling, but instead a restriction on Sterling's use of the licensed right. It seemed to me pretty clear that what the Postal Service was trying to do with that clause, and correct me if this isn't correct, is to make sure that you didn't go distributing these things in places that the Postal Service would not want its insignias found in adult bookstores or something, hypothetically. But it would have required something more, would it not, to have established an affirmative right to access to any particular Postal Service facilities, above and beyond the prohibition on sales in other facilities. It seems to me two rather different points. I know that the, of course, the Postal Service position, among other things, has been that this is nothing more than a limitation. Right. And it doesn't actually give you any... Right, so why isn't, I guess the question is, why isn't that the most sensible reading of that clause? What is it about that clause that suggests an affirmative right of access? Well, Your Honor, let me point the Court to, in Exhibit B, to the contract. I'm at page 44 of the appendix. Paragraph C, subparagraph 1, says that the licensee, Sterling, agrees to use its best efforts to sell, distribute, and supply the licensed articles within the licensed territory, and failure to do so is considered a breach of the agreement. Paragraph 2 states that the licensee, Sterling, undertakes to make and maintain adequate and reasonable arrangements for the distribution of licensed articles through the channels of distribution. It specifies Sterling has there an obligation to make and maintain arrangements to distribute these articles through the specified channels of distribution. We would say that you can hardly do that if you don't have a right to use those channels of distribution. Well, but if the channels of distribution had specifically identified, let's suppose they make it simple, if they just said one channel of distribution, the U.S. post office facilities, and then the post offices said, no, you don't have access to U.S. post office facilities, you have a pretty good argument, but that's not the way that clause reads, and so the question then is why isn't that clause properly read as a restriction on channels of distribution that are permissible without also giving direct access to particular individual facilities that would fall within the scope of that definition. Follow the question? Your Honor, I can only say what I have already said, that the way I understand this agreement, it places an obligation on Sterling Winchester to distribute these articles through the specified channels of distribution and to keep adequate inventories to be able to do that and to make reasonable arrangements, as it says, to distribute these articles through the channels of distribution specified in the agreement. If these are the only channels that are authorized and if this is not a grant, or I don't know if grant is really the proper word, but if this is not an agreement that Sterling Winchester can use the channels of distribution that are specified in the agreement... But isn't there a difference between permitting them to use the trademark property in these channels versus giving them access or guaranteeing them? This says you could go sell it in borders, but you can't walk into borders and say, Aha, I've got this contract, you have to let me do that. I agree with that 100% that you couldn't do that, Your Honor. So then why would you go to the U.S. Postal Service and say, Aha, this lets me do that? Well, I think the difference is that the Postal Service is a party to this agreement and borders is not. But the agreement does not say you can sell these. We're giving you permission to sell these at a U.S. Postal Service philatelic center. It mentions the philatelic center, but it's not specifically saying, Here are the terms of what you can sell, where you can sell it. Why would it be any different without that particularity there? Different as between the third-party outlet and the Postal Service outlet? Right, without any specificity as to U.S. Postal Service philatelic centers. Well, of course, we contend that this does refer specifically to the Postal Service philatelic centers and philatelic catalogs. Aren't you reading Postal Service into the contract? Well, Your Honor, of course, this is laid out in our brief. I think that there are uncontroverted facts that support the position. I don't think we're reading anything into it. The term philatelic centers only appeared in the agreement in the first place because Sterling Winchester specifically requested that the Postal Service philatelic centers be added as a distribution. But if the contract is unambiguous, do we even need to get to those facts, or can the court properly look at those facts? Well, Your Honor, I don't think the court can determine whether the contract is ambiguous or not ambiguous without putting it into some context. What were the conditions, what were the circumstances that existed at the time the parties executed this agreement? At the time, the language in the agreement on philatelic centers was only there because a specific request had been made and agreed to by the Postal Services agent that the Postal Service philatelic centers would be added as a distribution channel. But, Mr. Wright, aren't you really trying to add language to your grant of a license under Part 2A? If after sell-distribute a clause was added through the channels of distribution, that would clarify the contract. That would be extremely clear as to what was meant. And the grant for distribution through those centers would have been given. And there's a question as to whether or not they were given. As Judge St. Eve points out, where is the grant to distribute through those centers? Where is that right given in the contract? That's the problem that you have, and the answer is not very clear, to me at least, as to whether the grant was given or not. Well, as I say, Your Honor, what we rely on are, I think, three facts that would show this. Number one, and as far as I know, these are uncontroverted facts. Number one, the only reason that the term philatelic centers is even in there to begin with is because of a specific request that postal service philatelic centers be added as a distribution channel. And that was agreed to, and the language was added by the Postal Services agent, in this case, EMI. What impact would the integration clause that is clearly in the agreement, saying that the agreement constitutes the entire agreement between the parties, have on your argument that we should look at these facts that are outside of the agreement? I don't think it has any, Your Honor. We do not contend that this agreement should be varied, modified, or that any terms should be added to this agreement. Our position is this, is that the evidence that I'm referring to simply shows what the intention of the parties was, what these terms mean. I mean, philatelic catalog isn't an everyday term. Philatelic center, these aren't terms that just the average person on the street would have some clear understanding of to where it would be unambiguous. It only becomes unambiguous when you put it into the context of what the circumstances were under which the parties executed the agreement. If you take those away, I would contend that the agreement becomes ambiguous. My time's up here. You can go ahead and finish your thought. Well, I'll just say, if you take it out of that context, then we would contend this is an ambiguous agreement, and you can't tell from just looking at the face of the agreement whether it includes the Postal Service facilities or not. Okay, thank you, Mr. Wright. We'll reserve a couple of minutes of rebuttal for you. Mrs. Iwusa-Ninja? May it please the Court. The Court of Federal Claims properly interpreted the license agreement between SWL and the USPS, finding that, one, the license agreement did not grant SWL a right of access to any distribution channel, and, two, that the license agreement did not grant SWL a right of access to United States Postal Service publications or facilities, given that it made no reference to those publications or facilities. What does that channel of distribution mean? Why is that clause in there? It is, precisely as Your Honor mentioned before, it is a limitation on the grant. The license grant, first of all, we point to the title of the agreement. It is a license agreement. Then the second paragraph on page 35 states that USPS, in this agreement, grants to licensee a license to use, certain names, etc. If we turn also to page 42, which contains the grant in paragraph 2A, it states, subject to the limitation set forth herein, USPS hereby grants to licensee, etc., this particular license. Now, the channels of distribution... But it grants the license to sell and distribute and advertise. Yes. If, in fact, the distribution was to be made to the channels of distribution. Yes. And the channels of distribution include philatelic centers. Include philatelic centers. Why aren't those included as part of the grant? Because there is no grant of access to any particular facilities. The grant is a license to use, as stated in the second paragraph on page 35, subject to certain terms and conditions. One of the terms and conditions listed below, in addition to what the license properties are, what the license articles are, what the license type is, what the license territory is, are the channels of distribution. It limits the use of postal service intellectual property to use in connection with particular items. Through certain channels of distribution. Yes. And those channels of distribution are philatelic centers. One of which is a philatelic center. Yes. So isn't that included in the agreement to distribute through the philatelic center? No, because the channels of distribution term is not a grant of a right to distribute in those particular channels. It is a limitation on how you can use your license. The license is a license to use. A license to manufacture is sell and distribute. Correct. They have a right to distribute the product. They can't just manufacture it. Right. Right. So if they distribute, and the distribution is very clear. The license agreement on page 35, as we pointed out before, states channel distributions. Yes. On part B, which gives a grant of the license, it says manufacture, sell, distribute. Yes. Now, distribute through what? Limitations. Limitations of the channels of distribution. It's a limitation. It is not a grant of a right to actually distribute in any particular channel of distribution. One clear example is that all of the other channels of distribution, SWL agrees that this does not, could not, grant them a right to go into borders, as Judge St. Ian mentioned, or any other place to get a grant of access. That is what we believe is very clear evidence that you can't read this channels of distribution term in the way that they would like to. That would create a conflict. It would introduce an inconsistency amongst the different channels of distribution that are limited. And given that it's so clear that there is nothing in here that says that there is an actual grant of access to any particular channel of distribution. If you are able to get access, then you have the right to distribute in a particular channel. But they were never able to obtain that actual access. So they had to renegotiate the agreement with the post office to obtain the product and place the product in the philatelic center. Is that what you're saying? Well, not quite. Because the other evidence that came out below, which we do not believe needs to be considered because the agreement is unambiguous on these points. But the other evidence shows that there is a separate process for actually placing products in a particular United States Postal Service facility, which SWL was trying to avail itself of and failed to convince the Postal Service to actually carry its products. Well, EMI was acting on behalf of the Postal Service. With respect to licensing its intellectual property, not with respect to placing products in Postal Service facilities. Well, there's some e-mails going back and forth specifically on September 17th, indicating, and this is at page 511 of the appendix, saying, let you and I plan to chat especially about this as we talk. The USPS philatelic channels were added to your agreement, as you point out, does not obligate the USPS to purchase those products, either for giver or for resale. They don't talk about using the centers for distribution. They're saying there that, as far as I can tell, the USPS to purchase the products. So they didn't want the Post Office to purchase. It doesn't say we're limited to purchase or to distribute. So there could be an implication that they could distribute through the center, but the Post Office was not obligated to buy the calendars. Well, we believe that evidence is parole evidence, which cannot be... I understand that. It is parole evidence. But if the contract is ambiguous, why can't the parole evidence be brought in to at least describe what the party's intent was? Well, it certainly can. And we would argue, and I believe that SWL agrees, that if this court finds that the contract is ambiguous, then it must remand to the Court of Federal Claims to consider that evidence. There certainly is a lot of other evidence in the record contrary to SWL's interpretation even of that particular piece of evidence. But that's up to the trial court to determine. It's not up to us to do it. We're not capable of determining facts, are we, or should we be able to do it? Under these circumstances, this court should not determine those facts. So if we find that the contract is ambiguous, then we would have to remand for additional fact-finding on the issue of parole evidence and determine whether or not the party's intended to use those channel distributions through the Post Office. Yes. But because it is clear that the license agreement is just that, a license to use, make, and distribute, it does not contain any grant of actual access to any particular channel of trade, certainly not to any Postal Service channels of trade. Are there any philatelic centers that are not affiliated with the Postal Service? It depends on what you mean by that. We believe that because the term philatelic center is not defined in the contract and the contract does not incorporate any other definition, then we just must look at the general dictionary meaning of these terms. The term philatelic has a meaning in the dictionary, which is associated with philately, which is the study of stamp collecting. On that point, I just must take issue with one of the points that Mr. Wright raised with respect to how the term philatelic centers came into the agreement. Now, again, we do not believe that this evidence needs to be considered by this court because the contract is unambiguous. But before moving on, was there any evidence of non-Postal Service philatelic centers? I understand your argument about look at the dictionary, but was there any evidence that there are philatelic centers similar to borders bookstores that aren't affiliated with the Postal Service? There are stores that sell specifically to philatelists. Besides those that are run by the Postal Service, there are other stores which sell products specifically to stamp collectors, yes. What about the definition of philatelic centers at page 101 of the appendix? From a Postal Service document identifying what a philatelic center is. Well, we believe because that glossary was never incorporated into the agreement, and in fact the glossary itself states at the beginning that it is only for internal Postal Service use and it does not set forth any legal definitions, that that is not relevant to the meaning of philatelic center within the agreement. But I thought that the definition was quite interesting because it says philatelic center, a retail outlet, a designated location in a postal lobby that sells select stamps, so on and so forth, and it's also called a postique, which is a USPS trademark. So you're saying that this was not considered by the post office or the parties at the beginning, so we should exclude that? Yes, it's not. Unless the contract is so ambiguous that it needs to go back to make that determination. Right, it was not incorporated into the agreement, and we would note another piece of evidence that does not need to come in at this point, but the philatelic centers only sell actual stamp products, not the calendars which have representations of stamps. But obviously on remand we would get into all of that evidence. But it could be considered a channel of distribution. The United States Postal Service philatelic center? No, no, I mean the philatelic center. The United States Postal Service philatelic center? For purposes of a limitation of the license grant, we don't believe that the term philatelic centers and merchandise stores here refers to the United States Postal Service facilities. Well, wait, I now don't think I understand your argument, because I was thinking that you were saying that as long as you distribute within the permissible channels of distribution, assuming you can get permission from those folks, that you're fine. Surely if the Postal Service agreed to allow the distribution in philatelic centers of the Postal Service, it wouldn't be a violation of the channels of distribution clause, right? Well, I think what you just said was you don't think that the term philatelic center in the contract refers to USPS philatelic centers. Surely it does. Well, let me clarify. It may include United States Postal Service philatelic centers, but it's not what they claim, which is that philatelic centers refers specifically to United States Postal Service philatelic centers, which is why they believe it constitutes a grant of access. The question would turn up whether it's exclusively the USPS philatelic center, capital P, capital C. Correct. So if there is nothing further, we would just respectfully request that this court affirm the decision of the Court of Federal Claims entering summary judgment in favor of the government on Sterling Winchester and Long's breach of contract claim and on the government's $100,000 breach of contract claim against Sterling Winchester and Long. We would just reiterate that regardless of how the terms philatelic centers and philatelic catalogs are interpreted, it is clear that the channels of distribution is a limitation on the grant given to Sterling Winchester and Long to use the intellectual property of the Postal Service, and there is no right of access granted. Thank you. Mr. Wright, two minutes for rebuttal. Your Honor, I don't really have any rebuttal. I think that this obviously is understood well by the panel, and I won't beat it any further. Thank you. The case is submitted.